**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR12-01627-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Richard D. Bernal, | |
| Defendant. | |

Defendant Richard D. Bernal has filed a Motion to Suppress Evidence. Doc. 36. The motion is fully briefed, and the Court held an evidentiary hearing on May 30, 2013. For reasons that follow, the Court will deny the motion.

**I.   Background.**

Defendant argues that Phoenix Police Department Officer Travis Morrison detained Defendant without reasonable suspicion and thereby violated Defendant's Fourth Amendment rights. Defendant asks the Court to suppress all evidence resulting from this alleged constitutional violation, including a firearm and ammunition found at the scene and statements Defendant made to police officers.

The following facts are based on testimony and exhibits provided at the evidentiary hearing, including the Court's credibility determinations. Shortly after 2 a.m. on March 1, 2010, a man who identified himself as Thomas placed an emergency 911 phone call and reported a possible hit-and-run accident at the end of the exit ramp at Interstate 10 and North 51st Avenue. The caller said that a two-tone SUV was traveling at least 50 miles an hour and "almost flipped over" when it hit a curb. The caller noted

that the SUV might be fleeing a police helicopter in the area.

As a result of this report, a Phoenix police dispatcher issued a "961-Henry" call to officers in the area. 961-Henry indicates a possible hit-and-run accident. The dispatcher reported that the caller thought the SUV was trying to get away from a DPS helicopter. Officer Morrison responded to the dispatch call and located an SUV that matched the 911 caller's description parked in the center of the west bound lane of West Willetta Street, about one-quarter mile from the exit ramp where the collision was reported to have occurred.[1]

Officer Morrison pulled up behind the SUV and activated his overhead lights as a safety precaution. The SUV had two flat tires on the driver's side, and Office Morrison observed three men attempting to change one of the tires. Officer Morrison exited his vehicle and asked the men if they were involved in an accident. One of the men said no. Officer Morrison testified that the men seemed surprised to see him and tried to ignore him as they continued to work on the tire. Officer Morrison asked who had been driving the car, and all three men denied being the driver. Suspecting the men of making false statements and noting that at least one of the men appeared to be intoxicated, Officer Morrison began to investigate further. He patted down Defendant, who was standing closest to him and wearing a bulky overcoat, but did not find any weapons. Officer Morrison then directed Defendant to sit on the curb. There is disagreement as to whether Officer Morrison handcuffed Defendant at this point or later, and Officer Morrison has given conflicting accounts on that fact. The Court will assume for purposes of this motion that Defendant was handcuffed when he was placed on the curb. The Court concludes that the investigatory detention of Defendant began when he was patted down and placed on the curb. Officer Morrison patted down the other two men, sat one of them on the curb, and had another move some distance away.

---

[1] Witness Young Chavez, who was with Defendant on the night in question, testified that the SUV was parked on dirt next to the street, not in the middle of the lane as Officer Morrison claimed. The Court did not find Mr. Chavez to be a credible witness, and accepts Officer Morrison's version of events.

- 2 -

After Defendant had been seated on the curb, he reached into his pocket, removed something, and threw it behind him. Officer Ritchey, who had arrived at the scene and was assisting Officer Morrison, observed and reported this action. Officer Morrison looked behind Defendant and found a loaded hand gun. At this point, Defendant said to Officer Morrison: "I should have told you about the gun. I didn't mean to give you any trouble, man." Defendant was arrested and taken to the police station, where he told an officer "I shouldn't have been carrying that gun, I know I shouldn't have, I'm sorry."

**II.    Legal Standard.**

An investigatory stop does not violate the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotations and citations omitted). The Court must look at the "totality of the circumstances" to determine whether the officer has an objective basis for suspecting wrongdoing. *Id* at 273. "All relevant factors must be considered in the reasonable suspicion calculus – even those factors that, in a different context, might be entirely innocuous." *Id.* at 277–78. A suspicion must be "objectively reasonable" – "the officers' subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274.

**III.   Discussion.**

The Court finds that Officer Morrison had sufficient reasonable suspicion to detain Defendant while conducting an investigation of the events that had occurred. This conclusion is based on a number of facts.

For several reasons, the 911 call was sufficiently reliable to provide a reasonable basis for suspicion. First, the call described the SUV in detail – sufficient detail for Officer Morrison to identify the vehicle when he saw it. *See United States v. Fernandez-Castillo*, 324 F.3d 1114, 1119 (9th Cir. 2003) (report credible when it described the

suspect's car in detail). Second, the call accurately described the location of the reported events. Officer Morrison found the SUV approximately one-quarter mile from the scene identified by the caller, just west of North 51st Avenue. *Id.* (report credible when it accurately described location of the vehicle). Third, the condition of the SUV was consistent with the caller's report that it hit a median at a high rate of speed and almost flipped over. The SUV had two flat tires on the driver's side. Fourth, the 911 caller gave his first name, location, and phone number to the dispatcher. This information would have rendered the caller accountable if he had fabricated the story, adding to the credibility of his report. *Id.* at 1118 (anonymous call, with no identifying information of the caller, less reliable because the tipster cannot be held accountable for fabrications).

Several other facts add to the Court's finding of an objective basis for reasonable suspicion. The 911 call was received shortly after 2 a.m., the hour when local bars close. In Officer Morrison's experience, drivers at that hour often are intoxicated. Upon first arriving, Officer Morrison observed that at least one of the three men at the SUV appeared to be intoxicated.

Officer Morrison testified that the area where the vehicle was parked is a high-crime area. *See Illinois v. Wardlow*, 528 U.S. 119 (2000) ("An individual's presence in a 'high crime area' . . . [is] relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation"). The SUV was also stopped in the middle of a driving lane on a dark street, which itself may have violated the law.

The three men found with the vehicle behaved suspiciously. They did not welcome Officer Morrison's presence as he testified people usually do when assisted by police in the middle of the night in a high-crime area. Each denied being the driver, and one of them denied that the SUV had been involved in an accident even though Officer Morrison had strong reason to suspect otherwise – the report from the 911 caller, the matching description of the vehicle, the location of the vehicle, and its two flat tires. *See id.* ("Nervous, evasive behavior is another pertinent factor in determining reasonable suspicion").

1    While driving to the area where the car was located, Officer Morrison overheard a
2 report on the radio that a Phoenix police helicopter had been in the area at the time of the
3 reported accident, but was not looking for the SUV. Even though the police were not
4 looking for the SUV, the occupants may well have been trying to avoid the helicopter as
5 reported by the 911 caller.

6    Considering all of these facts, the Court concludes that a reasonable policeman in
7 Officer Morrison's position would have reasonable suspicion that criminal activity was
8 afoot. Possible criminal activity would include a hit-and-run accident or driving while
9 intoxicated. Defendant argued during the hearing that there was no basis to detain him
10 because there was no basis to believe he had been driving the SUV. But when Officer
11 Morrison asked who was driving, each of the three individuals said they were not. Thus,
12 at the time of Defendant's detention it was possible that Defendant had been the driver.
13 Further investigation was required. Young Chavez testified that he told Officer Morrison
14 that the driver had left the scene, but the Court did not find the testimony credible.

15    Defendant also argues that the 911 caller's hit-and-run report could not have
16 produced reasonable suspicion because leaving the scene of a collision with a median is
17 not a crime. At the time of the initial encounter with Defendant and his two companions,
18 however, Officer Morrison did not know the precise nature of any accident that had
19 occurred. The dispatcher had reported a 961-Henry, which Officer Morrison testified can
20 mean several different hit-and-run violations. The SUV was damaged. Defendant and
21 his companions denied they were in an accident despite the fact that the vehicle had two
22 flat tires, matched the description of the 911 call, and was in the vicinity of the reported
23 incident. Defendant and his companions were acting suspiciously. Officer Morrison
24 surely had an objectively reasonable basis for detaining Defendant and his companions
25 long enough to determine whether a hit-and-run crime had in fact occurred.

26    Nor does the fact that Defendant was handcuffed turn this investigative stop into a
27 Fourth Amendment violation. Three men were encountered at approximately 2:30 a.m.,
28 on a dark street, in a high crime area. Officer Morrison had received a report that they

may have been attempting to avoid a police helicopter. The men were behaving suspiciously and giving apparently false information. Officer Morrison was alone when he first arrived at the scene. In this circumstance, handcuffing Defendant and the others while he completed a *Terry* stop investigation was not unreasonable. *See United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009) ("because the purpose of a *Terry* stop is to allow the officer to pursue his investigation without fear of violence, we allow intrusive and aggressive police conduct without deeming it an arrest when it is a reasonable response to legitimate safety concerns on the part of the investigating officers" (quotations, citations, and ellipses omitted)); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995) (holding that officers could order individuals from car at gunpoint and handcuff them in the course of a *Terry* stop).

Considering the totality of the circumstances and applying an objective standard, the Court finds that the officer's actions did not violate the Fourth Amendment.

**IT IS ORDERED** that Defendant's Motion to Suppress (Doc. 36) is **denied**. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 4/19/2013.

Dated this 7th day of June, 2013.

_____
David G. Campbell
United States District Judge